Filed 10/30/25  P. v. Castaneda-Morales CA2/5
Review denied 2/11/26; reposted with Supreme Court order and statement

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B341744 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA077249) |
| v. | |
| JAIME CASTANEDA-MORALES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Robert G. Chu, Judge.  Affirmed and remanded with instructions.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne and Shezad H. Thakor, Deputy Attorneys General, for Plaintiff and Respondent.

Jaime Castaneda-Morales was sentenced in connection with his convictions of forcible rape of victim A.M. (Pen. Code,[1] § 261, subd. (a)(2); count 1) and misdemeanor child molestation of victim J.M. (§ 647.6, subd. (a)(1); count 8) shortly after amendments to the Determinate Sentencing Law took effect on January 1, 2022.[2]

In the first appeal to this court, the parties agreed that although the trial court was aware of the revised law, the court did not impose Castaneda-Morales's sentence in accordance with the amendments to section 1170. Because the error was not harmless, this court reversed and remanded to the trial court for resentencing in accordance with the amended law.

Following resentencing, Castaneda-Morales contends that the trial court once again erred, this time by: (1) adopting its previous findings, which this court held invalid; and (2) relying on Castaneda-Morales's prior strike conviction to both impose the high term in count 1 and to double his sentence in count 1 pursuant to the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). Castaneda-Morales additionally contends that the trial court's nunc pro tunc minute order dated October 24, 2024, incorrectly reflects that on January 26, 2022, he was resentenced pursuant to sections 1172.7 and 1172.75, and that the minute order must be corrected to reflect that Castaneda-Morales was resentenced pursuant to section 1170.

---

[1] All further statutory references are to the Penal Code.

[2] Castaneda-Morales was charged with multiple sex offenses, but the jury acquitted him of all but two counts.

2

The People agree that the trial court's minute order must be corrected, but dispute that the trial court erred in imposing Castaneda-Morales's sentence. The People respond that the trial court did not rely on factors that this court held invalid, and that the trial court properly relied on Castaneda-Morales's prior strike conviction to impose the high term and to double his sentence in count 1. Specifically, the People argue that the Three Strikes law is an alternative sentencing scheme not subject to section 1170, subdivision (b)'s prohibition on using a single aggravating factor as a basis for imposing the high term when that factor is used to impose an enhancement.

We agree with the parties that the trial court's nunc pro tunc minute order, dated October 24, 2024, must be corrected to reflect that on January 26, 2022, Castaneda-Morales was resentenced pursuant to section 1170. We remand the matter for the trial court to make this correction, but otherwise affirm the judgment.

## PROCEDURAL HISTORY

### C.    *Sentencing*

The jury found Castaneda-Morales guilty of forcible rape (§ 261, subd. (a)(2); count 1) and misdemeanor child molestation (§ 647.6, subd. (a)(1); count 8). In a bifurcated proceeding, Castaneda-Morales admitted that he had suffered a prior conviction within the meaning of the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

At the sentencing hearing, the court stated that it intended to sentence Castaneda-Morales to the maximum time allowed—

3

16 years in state prison in count 1 with a consecutive term of 364 days in count 8. The term in count 1 would be calculated by imposing the upper term of eight years, which the trial court would then double pursuant to the Three Strikes law. The court found that the circumstances in aggravation—the victim's vulnerability and Castaneda-Morales's propensity for violence, which posed a danger to public safety—outweighed any mitigating circumstances.

Defense counsel argued that amendments to section 1170, subdivisions (b)(1) and (2), which became effective on January 1, 2022 (after the jury's verdict, but prior to sentencing), required the court to impose the middle term. Pursuant to amended section 1170, subdivision (b)(2), all circumstances in aggravation must have either been stipulated to by the defendant or have been found true beyond a reasonable doubt at a jury or bench trial. No aggravating factors had been stipulated to or found true by the jury in Castaneda-Morales's case, so the upper term could not be imposed.

Defense counsel additionally made an oral motion to strike Castaneda-Morales's prior strike conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero* motion), so as to avoid the doubling of Castaneda-Morales's term of imprisonment.

The trial court stated that it considered the general objectives of sentencing, including protecting society, punishment, deterrence, and Castaneda-Morales's criminal history. The court found that Castaneda-Morales was prone to violence as evidenced by the facts of this case and his prior strike conviction. Castaneda-Morales did not commit the offenses as a result of provocation, coercion, or duress. Castaneda-Morales

4

was not youthful or inexperienced.  A.M. was particularly vulnerable.  Castaneda-Morales drove her to a secluded location. He took advantage of A.M.'s strained relationship with her mother.  Castaneda-Morales also molested J.M. and appeared to be grooming her.  Castaneda-Morales was a threat to society. The court found that he showed no remorse, and blamed A.M. for the rape.  Castaneda-Morales did not understand that a 14-year-old child cannot consent to sexual intercourse, and did not appreciate the trauma he had inflicted on A.M.  Castaneda-Morales would continue his predatory behavior if not imprisoned.

Regarding Castaneda-Morales's prior strike conviction, the trial court stated that the "touchstone of the analysis must be whether looking at the defendant and his history as a whole, taking into account the nature of the present case, background and character, the defendant may be deemed outside the scheme's spirit and should therefore be treated as though he had not previously been convicted of a strike.  [¶] It is also essential for the court to consider the interest of the public and public safety.  This court also considers whether dismissal of the prior strike could impact provisions of Marsy's law.  [¶] Based on all the information that has been provided to the court, based on the same reasoning the court has just stated, the court is not satisfied on how dismissing the defendant's prior strike allegation would be in the interests of justice and; therefore, defense motion to dismiss his prior strike will be denied."[3]

---

[3] Although Castaneda-Morales admitted the strike for purposes of the Three Strikes law, the prosecution did not provide a certified record of conviction to the court at the original sentencing hearing, and the court did not rely on the strike conviction as a basis for imposing the high term.

The court denied probation and sentenced Castaneda-Morales to the high term of eight years in count 1, doubled to 16 years pursuant to the Three Strikes law, plus a consecutive term of 364 days in count 8.

## B.    *Prior Appeal*

On appeal, Castaneda-Morales contended, and the People agreed, that the trial court had not complied with recent amendments to section 1170, subdivision (b), which made the middle term the presumptive sentence for a term of imprisonment.  The court could impose a higher sentence "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)  This court concluded that the two overarching aggravating circumstances that the trial court had relied upon to impose the upper term in count 1—(1) that A.M. was a particularly vulnerable victim (Cal. Rules of Court, rule 4.421(a)(3)), and (2) that Castaneda-Morales is prone to violence and a danger to society  (*Id*., subd. (b)(1))—were neither stipulated to nor found true by a jury or in a court trial and could not support imposition of the high term.[4]  This court concluded

---

[4] When analyzing these two aggravating circumstances, we considered Castaneda-Morales's prior conviction, the nature and circumstances of the instant crime, Castaneda-Morales's lack of remorse, and the fact that Castaneda-Morales took advantage of a position of trust or confidence to commit the rape.

6

that the error was not harmless, vacated the sentence, and remanded the matter for resentencing.

## C. *Resentencing*

At the resentencing hearing, the prosecutor provided the court with Castaneda-Morales's certified rap sheet, which the court moved into evidence.

Defense counsel agreed that the trial court could take the certified rap sheet into account, but argued that Castaneda-Morales only had one prior strike conviction, which the court could not use to both impose the high term and to double the sentence pursuant to the Three Strikes law. Counsel argued there were two alternatives—the trial court could either impose the middle term doubled or it could impose the high term and strike the prior strike conviction.

The prosecutor emphasized that the trial took place before the amendments to section 1170 were in effect, so aggravating factors were not included in the information. The prosecutor stated that this court left open the possibility that on remand the trial court could consider factors other than the two that had been rejected in the appellate opinion. Moreover, Rules of Court, rule 4.421, subdivision (b)(2) permits the trial court to consider as an aggravating factor that the defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness. The trial court could rely on the fact that Castaneda-Morales had a prior conviction to impose the upper term.

The court stated: "The court does want to supplement its original reasoning that it put on the record at the time of the

original sentencing. So the court is considering defendant's prior convictions under section 1170[, subdivision] (b)(3). And that section does state: [¶] 'Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury.' [¶] The court also does note that the California Rules of Court, rule 4.420[, subdivision] (c) affirms this when it says that: [¶] 'The court may consider the fact of the defendant's prior convictions based on a certified record of conviction without it having been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial.' [¶] The People have provided this court with a certified copy of the defendant's rap sheet, which is marked as People's X. And the court does see that the defendant has a prior strike conviction. . . . The court is taking that into consideration and finding that as an aggravating factor in this case." The court again imposed the high term of eight years, doubled to 16 years pursuant to the Three Strikes law, in count 1, plus a consecutive sentence of 364 days in count 8.

Defense counsel inquired of the court, "So in finding the aggravating factor to be true, the court is relying on the prior conviction from the same case that is used, that he admitted to, to double the strike?" The court responded, "That's correct."

# DISCUSSION

After Castaneda-Morales's trial but prior to his sentencing hearing, Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) amended section 1170, former subdivision (b)(1) to make the middle term the presumptive sentence for a term of imprisonment. The court may impose a higher sentence "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) There is one exception to this general rule: "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

Castaneda-Morales contends that the trial court erred by (1) adopting the reasoning of its prior ruling, which this court held was error; and (2) impermissibly relying on Castaneda-Morales's single prior conviction to both impose the high term and to double his sentence pursuant to the Three Strikes law in count 1. We reject Castaneda-Morales's arguments.

First, we agree with the People that the trial court did not rely on unproven factors to impose the high term. This court specifically stated in the prior opinion that the trial court improperly relied upon (1) the victim's vulnerability; and (2) the fact that Castaneda-Morales had a propensity for violence and posed a danger to society as circumstances in aggravation, because neither the jury nor a court had found these

9

circumstances true following a trial, and Castaneda-Morales had not stipulated to either circumstance. At the resentencing hearing, the court did not refer to these unproven factors as aggravating circumstances warranting imposition of the high term. The court expressly stated that it was relying on Castaneda-Morales's prior conviction pursuant to section 1170, subdivision (b)(3), and Rules of Court, rule 4.420, subdivision (c), which both permit the court to consider as an aggravating factor the defendant's prior convictions based on a certified record of conviction. To the extent that the trial court relied on its reasoning at the original sentencing hearing, the court appears to have done so only in support of its determination that it would not be in the interests of justice to strike Castaneda-Morales's prior strike conviction, as defense counsel had urged. The court stated that its denial of Castaneda-Morales's *Romero* motion was "[b]ased on all the information that has been provided to the court, based on the same reasoning the court has just stated [for imposing the high term]. . . ."

Second, the trial court did not violate section 1170, subdivision (b)(5) by relying on Castaneda-Morales's prior conviction for the dual uses of imposing the high term and doubling the sentence in count 1 under the Three Strikes law. Section 1170, subdivision (b)(5) provides, in pertinent part: "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." The rule does not apply in this instance, because the Three Strikes law is an alternative sentencing scheme, not an enhancement subject to the dual use proscription. (*People v. Cressy* (1996) 47 Cal.App.4th 981, 991.) "An 'enhancement' is 'an additional term of imprisonment added to

10

the base term.' ([Former] Cal. Rules of Court, rule 405(c)[ (now Cal. Rules of Court, rule 4.405, subd. (5))].)" (*People v. Martin* (1995) 32 Cal.App.4th 656, 666, disapproved on another ground in *People v. Deloza* (1998) 18 Cal.4th 585.) "It is distinguished from the term prescribed for the underlying crime itself." (*Id*. At p. 667.) "Section 667, subdivision I(1) does not provide for any kind of 'added term.' Instead, [the Three Strikes law] defines the term for the crime itself, supplanting the term that would apply but for the prior serious or violent felony." (*Ibid*.) Thus, nothing in section 1170, subdivision (b)(5) proscribes the dual use of a single prior conviction to impose the high term and to double a term pursuant to the Three Strikes law. Castaneda-Morales offers no authority to the contrary, and we know of none.

We agree with the parties that the nunc pro tunc minute order dated October 24, 2024, incorrectly reflects that on January 26, 2022, Castaneda-Morales was resentenced pursuant to sections 1172.7 and 1172.75, and must be corrected to reflect that Castaneda-Morales was resentenced pursuant to section 1170.

11

## DISPOSITION

The matter is remanded for the trial court to correct the nunc pro tunc minute order dated October 24, 2024, to reflect that on January 26, 2022, Castaneda-Morales was resentenced pursuant to section 1170.  The judgment is otherwise affirmed.

NOT TO BE PUBLISHED.


MOOR, J.


I concur:


HOFFSTADT, P. J.

The People v. Jaime Morales
B341744


BAKER, J., Concurring



The outcome of the contested issue in this appeal turns on the Legislature's choice of a single word: "enhancement." (Pen. Code, § 1170, subd. (b)(5) ["The court may not impose an upper term by using the fact of any *enhancement* upon which sentence is imposed under any provision of law"], italics added.) The Legislature chose that word when enacting Senate Bill No. 567 (2021-2022 Reg. Sess.) (SB 567) in 2021—a statute that the bill's author intended to "confront the reality and interconnectedness of racism and inequality" in the "mass incarceration trend in American and California societies . . ." (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 567 (2021-2022 Reg. Sess.) Jun. 29, 2021, p. 3.)

Though the word "enhancement" as a general matter can bear a broader meaning, i.e., anything that increases the amount of time a convicted defendant will serve beyond the sentence for the offense of conviction itself, it has long carried a more technical meaning in this state—one that definitionally excludes an increase in sentence that is attributable to an alternative sentencing scheme like the Three Strikes law. (See, e.g., *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 527; *People v. Cressy* (1996) 47 Cal.App.4th 981, 991.) Courts ordinarily presume the Legislature chose its words aware of that

established meaning.  (*People v. Scott* (2014) 58 Cal.4th 1415, 1424.)  For that reason, I agree with the result the majority reaches in this case even though it seems in tension with the apparent ameliorative purpose animating passage of SB 567.[1] The Legislature, however, always retains the prerogative to clarify the statutory text if the result we reach—which permits dual use of prior second "strike" offenses—is not what it intended.


BAKER, J.


---

[1]    It is hard to imagine why the Legislature would have intended to forbid "dual use" when an enhancement is involved (e.g., to bar imposing the additional punishment of an upper term sentence for using a weapon during a crime when a one-year Penal Code section 12022, subdivision (a) enhancement is applied) but to permit dual use in case of a prior strike conviction—which will often have a more severe impact on a defendant's sentence than dual use where an enhancement is concerned.

Permitting dual use for prior "strike" crimes may also be in tension with the "under any provision of law" language in Penal Code section 1170, subdivision (b)(5) and with the concept of an "alternative" sentencing scheme (because the meaning of "alternative" suggests a scheme that applies apart from, and perhaps to the exclusion of, other customary sentencing rules). Defendant, however, has not developed either of these two arguments.

Court of Appeal, Second Appellate District, Division Five - No. B341744

**S294254**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

THE PEOPLE, Plaintiff and Respondent,

v.

JAIME CASTANEDA-MORALES, Defendant and Appellant.
_____

The petition for review is denied.

(See Concurring Statement by Justice Liu.)

_____/s/_____
*Chief Justice*

PEOPLE v. CASTANEDA-MORALES

S294254

Concurring Statement by Justice Liu

Defendant Jaime Castaneda-Morales was convicted of two sex offenses and acquitted of six.  On remand, the trial court relied on his prior felony conviction to resentence him to the upper term of eight years on the felony sex offense.  (See Pen. Code, § 1170, subd. (b)(2); all undesignated statutory references are to this code.)  The court then used the same prior conviction to double the term to 16 years, as required by the Three Strikes law.  (See §§ 667, subd. (e)(1), 1170.12, subd. (c)(1).)

Castaneda-Morales claims that Senate Bill No. 567 (2021–2022 Reg. Sess.) precludes this outcome.  A month before the trial court originally sentenced Castaneda-Morales, Senate Bill No. 567 reconfigured California's determinate sentencing law. Now, a trial court must impose "a sentence not to exceed the middle term" when a "statute specifies three possible terms." (§ 1170, subd. (b)(1).)  A court can only impose the upper term "when there are circumstances in aggravation of the crime . . . and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial."  (§ 1170, subd. (b)(2).)

As relevant here, section 1170, subdivision (b)(5) provides: "The court may not impose an upper term by using the fact of any *enhancement* upon which sentence is *imposed under any provision of law*."  (Italics added.)  Castaneda-Morales argues this provision prevented the trial court from using his prior

1

felony conviction as both an aggravating factor and an "enhancement" imposed under the Three Strikes law. As he sees it, the trial court could have either imposed the middle term doubled to 12 years or imposed the upper term of eight years while dismissing the prior felony conviction allegation so as not to trigger the Three Strikes law (see § 1385, subd. (a)).

The Court of Appeal disagreed, reasoning that section 1170, subdivision (b)(5) does not apply because "the Three Strikes law is an alternative sentencing scheme, not an enhancement." (*People v. Castaneda-Morales* (Oct. 30, 2025, B341744) [nonpub. opn.] (*Castaneda-Morales*).) Accordingly, the court held that "nothing in [the provision] proscribes the dual use of a single prior conviction to impose the high term and to double a term pursuant to the Three Strikes law." (*Ibid.*)

The Court of Appeal reached this result by inferring the Legislature intended the term "enhancement" to carry its legal meaning. (*Castaneda-Morales*, *supra*, B341744.) Similarly, another case, denied review today, presumes the Legislature " 'acquiesced' " in the judicial distinction between Three Strikes sentences and a sentencing enhancement when it enacted section 1385, subdivision (c), the new provision empowering courts to dismiss enhancements. (*People v. Flores* (Oct. 27, 2025, F086893) [nonpub. opn.], review den. Feb. 11, 2026, S294215.) Although these approaches to statutory interpretation are not illogical, we have cautioned that "[a]rguments based on supposed legislative acquiescence rarely do much to persuade." (*Scher v. Burke* (2017) 3 Cal.5th 136, 147.)

The outcome here effectively carves out an exemption for our state's "most common sentencing enhancement." (Com. on Revision of the Pen. Code, 2023 Annual Report and

Recommendations (2023) p. 37.) Senate Bill No. 567 was crafted to " 'ensure that the harshest sentences receive the greatest scrutiny and justification before they are meted out' " and to " 'confront the reality and interconnectedness of racism and inequality' " in the " 'mass incarceration trend in American and California societies.' " (Assem. Com. on Public Safety, analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) as amended May 20, 2021, p. 3.) As the bill's author put it, " 'That trend in our carceral system has been a collective detriment that' " Senate Bill No. 567's refresh of section 1170 is meant to help " 'reverse[].' " (Assem. Com. on Public Safety, analysis of Sen. Bill No. 567, *supra*, as amended May 20, 2021, p. 3.)

Against this backdrop, it seems odd to say the Legislature intended the bill and others like it (e.g., Senate Bill No. 81 (2021–2022 Reg. Sess.)) to leave the Three Strikes law untouched. The Three Strikes law "was enacted 'to ensure longer prison sentences and greater punishment' for repeat offenders." (*People v. Fletcher* (2025) 18 Cal.5th 576, 587, quoting former § 667, subd. (b), as amended by Stats. 1994, ch. 12, § 1.) At any given time, over a third of people incarcerated in California are serving sentences that were doubled or tripled under the law. (Bird et al., Three Strikes in California (2022) p. 13.) It would surprise no one to infer that the Legislature understood the law to be a "sentencing enhancement statute." (*In re Milton* (2022) 13 Cal.5th 893, 920 (dis. opn. of Liu, J.); see Com. on Revision of the Pen. Code, 2020 Annual Report and Recommendations (2021) pp. 38–42.)

Moreover, the Three Strikes law is at the root of the "mass incarceration trend" that Senate Bill No. 567 was designed to curtail. The Legislature and California voters enacted the law in 1994 at a time when "the justice system shifted away from a

rehabilitative objective and became more punitive." (*People v. Hardin* (2024) 15 Cal.5th 834, 905 (dis. opn. of Evans, J.); see Cal. Dept. of Corrections, Three Strikes, You're Out: Two Years Later (1996).) Today, as was true then, Black and Native American individuals are "significantly more likely" than White individuals to receive life sentences under the law. (Chen, *The Liberation Hypothesis and Racial and Ethnic Disparities in the Application of California's Three Strikes Law* (2008) 6 J. Ethnicity Crim. Just. 83, 97.) Among people serving life sentences on a "third-strike enhancement," 45% are Black; only 6% of the state population is Black. (Bird, *supra*, at p. 27.)

I agree with Justice Baker that "[i]t is hard to imagine why the Legislature would have intended to forbid 'dual use' when an enhancement is involved (e.g., to bar imposing the additional punishment of an upper term sentence for using a weapon during a crime when a one-year Penal Code section 12022, subdivision (a) enhancement is applied) but to permit dual use in case of a prior strike conviction — which will often have a more severe impact on a defendant's sentence than dual use where an enhancement is concerned." (*Castaneda-Morales, supra*, B341744 (conc. opn. of Baker, J.).) I join him in inviting the Legislature to examine whether a carve-out for the Three Strikes law in section 1170, subdivision (b)(5) is "in tension with the apparent ameliorative purpose animating passage of" the provision and should be reformed. (*Castaneda-Morales, supra*, B341744 (conc. opn. of Baker, J.).)

**LIU, J.**

**We Concur:**

**GROBAN, J.**

**EVANS, J.**