[No. F023476. Fifth Dist. Aug. 23, 1995.]

DANNY GONZALES, Petitoner, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Dallas J. Cole, Public Defender, and Martha J. Carlton, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stanley A. Cross and Judy Kaida, Deputy Attorneys General, for Real Party in Interest.

## OPINION

**STONE (W. A.), Acting P. J.**—Does "Three Strikes—The Legislation," Penal Code section 667, subdivisions (b) through (i), apply to California convictions predating its March 7, 1994, effective date?[1] Four recent cases have held the law applies: *People* v. *Anderson* (1995) 35 Cal.App.4th 587 [41 Cal.Rptr.2d 474] (*Anderson*); *People* v. *Reed* (1995) 33 Cal.App.4th 1608 [40 Cal.Rptr.2d 47] (*Reed*); *People* v. *Sipe* (1995) 36 Cal.App.4th 468 [42 Cal.Rptr.2d 266] (*Sipe*); and *People* v. *Green* (1995) 36 Cal.App.4th 280 [42 Cal.Rptr.2d 249] (*Green*). We do likewise.

An information charged petitioner Danny Gonzales with assault with intent to commit rape (count I, § 220) and assault with a deadly weapon (count II, § 245, subd. (a)(1)), both crimes occurring March 8, 1994. Appended to count I were special allegations that Gonzales had suffered prior convictions in 1980 and 1981, respectively, for robbery (§ 211) and residential burglary (§ 459), each crime being a serious felony within the meaning of sections 1192.7 and 667, subdivision (d). Appended to each count were four prior prison term enhancement allegations. (§ 667.5, subd. (b).)

Gonzales filed a motion to strike the prior felony conviction allegations pursuant to section 667, subdivision (d). Respondent granted the motion to strike. Real party in interest unsuccessfully sought writ relief in this court. Thereafter, the Supreme Court granted real party in interest's petition for review and transferred the matter to us with directions to issue an alternative writ. We issued an alternative writ of mandate directing respondent to vacate its strike order or show cause. Respondent vacated its order and we discharged the alternative writ.

Gonzales then filed the instant petition seeking an order directing respondent court again to grant his motion to strike. We issued an order to show cause.

### OVERVIEW

The Three Strikes legislation "was adopted as an urgency measure, effective March 7, 1994. It makes major changes to Penal Code section 667,

---

[1] All statutory references are to the Penal Code.
"Three Strikes—The Initiative" (Prop. 184) (§ 1170.12) became effective November 9, 1994, and parallels section 667. (*People* v. *Martin* (1995) 32 Cal.App.4th 656, 660, fn. 2 [38 Cal.Rptr.2d 776].)

adding subdivisions (b) through (i) relating to increased punishment for recidivists who suffered one or more previous convictions for a serious or violent felony. A 'serious felony' is one that is so defined in section 1192.7, subdivision (c); a 'violent felony' is a crime defined as such in section 667.5, subdivision (c). (See § 667, subd. (d)(1).)" (*People* v. *Martin, supra,* 32 Cal.App.4th at p. 660, fns. omitted.)

". . . The 1994 legislation contains a stated purpose: 'It is the intent of the Legislature in enacting subdivisions (b) to (i), inclusive, to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses.' (§ 667, subd. (b).)" (*People* v. *Ramirez* (1995) 33 Cal.App.4th 559, 564 [39 Cal.Rptr.2d 374].)

Section 667, subdivision (c), provides in part: "Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior felony convictions as defined in subdivision (d)," certain sentencing results follow.[2]

A defendant enters this labyrinth through section 667, subdivision (d), by virtue of California adult serious or violent felony priors, foreign equivalents, or qualifying California juvenile adjudications. Subdivision (d)(1) provides, in part: "Notwithstanding any other law and for the purposes of subdivisions (b) to (i), inclusive, a prior conviction of a felony shall be defined as: [¶] (1) Any offense defined in subdivision (c) of Section 667.5 as a violent felony or any offense defined in subdivision (c) of Section 1192.7 as a serious felony in this state. *The determination of whether a prior conviction is a prior felony conviction for purposes of subdivisions (b) to (i), inclusive, shall be made upon the date of that prior conviction* and is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor. . . ." (Italics added.)[3] The italicized language comprises the so-called "determination clause," which is at issue here.

---

[2]The Three Strikes law imposes various indirect and direct consequences on eligible defendants. The "indirect consequences include: inapplicability of aggregate term limitations for consecutive sentences; ineligibility for probation; ineligibility for diversion or commitment to the California Rehabilitation Center; conduct credit reductions; and mandatory consecutive sentences. (§ 667, subd. (d).) [¶] The legislation also directly increases sentences for felony recidivists. In the case of a single prior serious or violent felony conviction, the term for the current felony conviction is doubled. In the case of more than one such prior conviction, the sentence is life. . . ." (*People* v. *Ramirez, supra,* 33 Cal.App.4th at pp. 564-565, fn. omitted.) For the second striker, the statute provides for a lengthy minimum term of at least 25 years. (§ 667, subd. (e)(2)(A).)

[3]The subdivision then specifies four postconviction events which shall not affect "the determination that a prior conviction is a prior felony for purposes of subdivisions (b) to (i), inclusive . . . ."

## PETITIONER'S CONTENTION

 Gonzales makes two related claims linked to the premise the "determination clause" language requires a contemporaneous finding at the time the subject prior conviction occurred. First, he argues, a prior conviction occurring before March 7, 1994, is not a prior felony conviction within the meaning of section 667, subdivisions (b) through (i). Second, he maintains prior felony convictions, as defined by section 667, subdivision (d), do not include convictions for offenses which were not section 1192.7, subdivision (c) or section 667.5, subdivision (c) offenses at the time of conviction. In both instances, he reasons a court would not—indeed could not—have made the predicate finding at the time of conviction.

In addressing these contentions, we are guided by familiar principles of statutory interpretation: "In construing a statute, our principal task is to ascertain the intent of the Legislature. [Citation.] We do so by first turning to the words themselves, giving them their ordinary meaning. [Citations.] Of course, ' " 'language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' " ' [Citation.] In such circumstances, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citations.]" (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071-1072 [22 Cal.Rptr. 278, 856 P.2d 1134]; *Green, supra,* 36 Cal.App.4th at p. 282.)

## REED, ANDERSON, SIPE AND GREEN

*Reed, Anderson, Sipe* and *Green, supra,* reject Gonzales's interpretation of section 667, subdivision (d)(1). *Reed* found subdivision (d)(1)'s use of "upon" to be ambiguous. "Does this mean that the determination whether an offense is a 'strike' must be made *at the time* of the prior conviction—which cannot have occurred with convictions predating the Three Strikes law—or does it mean something else that permits application of the law to such convictions?" (*Reed, supra,* 33 Cal.App.4th at p. 1610, italics original.) *Reed* concluded "upon" meant "simply that the determination whether an offense is a 'strike' must be made *with reference to* the date of the prior conviction, and not with reference to the sentence subsequently imposed for the prior (unless the sentence converts the offense to a misdemeanor)." (*Id.* at p. 1611, italics in original.)

*Anderson* interpreted the clause similarly. "Clearly, the Legislature intended that the qualifying status of a conviction would be fixed upon the date of the prior conviction, so that no subsequent actions, including those listed in subdivision (d)(1)(A)-(D), could alter that status. By specifically distinguishing those status reductions that occur upon the initial sentencing, the Legislature was clearly contemplating those status reductions that may

occur later (see, e.g., § 17, subd. (b)(3)) and declaring that such reductions shall have no effect on the crime's status for the purposes of subdivisions (b) to (i). . . ." (*Anderson, supra,* 35 Cal.App.4th at pp. 600-601.)

*Sipe* concluded when the language of the determination clause is read in the context of section 667, subdivision (d)(1) as a whole, it is apparent "the 'determination' at issue must be whether the prior conviction 'is a prior *felony* conviction' rather than a conviction for a misdemeanor. This determination is made 'upon the date' of the conviction, so subsequent events, such as a reduction to a misdemeanor (§ 17, subd. (b)(3)), will not affect its classification as a felony conviction. [¶] . . . It is 'reasonable and common-sense' to provide a reference point (the date of conviction) for determining whether a conviction is for a felony or a misdemeanor. There is no reason, however, to require a court to determine whether a conviction may serve as a 'strike' unless and until the defendant commits another felony." (*Sipe, supra,* 36 Cal.App.4th at p. 478, italics in original.)

*Reed* cited three reasons for this interpretation of section 667, subdivision (d)(1). First, the lists of qualifying felonies found in sections 667.5, subdivision (c), and 1192.7, subdivision (c), "include several former felonies that were repealed before enactment of the Three Strikes law. Construction of the Three Strikes law to preclude its application to convictions predating its enactment would make meaningless its references to these former felonies, which can *only* have occurred prior to enactment, and is thus disfavored. (*People* v. *Jackson* [1985] 37 Cal.3d [826,] 832 [210 Cal.Rptr. 623, 694 P.2d 736].)" (*Reed, supra,* 33 Cal.App.4th at p. 1611, fn. omitted, italics in original; *Green, supra,* 36 Cal.App.4th at p. 282.)

Second, prospective-only application of the Three Strikes law would frustrate its basic purpose of deterring recidivism. (*Reed, supra,* 33 Cal.App.4th at p. 1611.) *Sipe* and *Green* agreed (*Sipe, supra,* 36 Cal.App.4th at pp. 482-483; *Green, supra,* 36 Cal.App.4th at p. 282); so did *Anderson.* "Thus, a defendant would have to commit a serious or violent felony, be prosecuted, serve any sentence imposed, and then commit a new felony before this law could be applied to him. This was manifestly not the Legislature's intent, and defendant supplies no authority whatsoever supporting this interpretation." (*Anderson, supra,* 35 Cal.App.4th at p. 601, fn. omitted.)

Third, given that the similarly worded Three Strikes *initiative* (Prop. 184) clearly was intended to apply to preenactment priors, "[i]t would be anomalous to conclude that the Legislature and the electorate intended different meanings for essentially identical provisions. And it would be absurd to sentence pre- and post-Proposition 184 defendants differently under those provisions." (*Reed, supra,* 33 Cal.App.4th at p. 1612.)

*Anderson* provided another reason: defendant's interpretation of section 667, subdivision (d)(1) effectively would negate the provision of subdivision

(d)(2) concerning foreign prior convictions.[4] "The Legislature could not have intended that the application of subdivision (d)(2) depend upon such an unlikely act . . ." as a finding, on the date of a conviction, in the foreign jurisdiction, of a conviction's Three Strikes status. (*Anderson, supra,* 35 Cal.App.4th at p. 601.)

## PLAIN LANGUAGE?

Gonzales asserts the "determination clause" is clear, unambiguous, and dictates prospective-only application. *Reed* found an ambiguity based on different meanings of "upon." (*Reed, supra,* 33 Cal.App.4th at p. 1610.) *Green* concluded the phrase "[t]he determination [as to whether a prior offense qualifies as a 'strike'] . . . shall be made upon the date of that prior conviction . . ." meant "the court is presently required to look backward to see if, at the time of the conviction of the past offense, such past offense qualified as a serious or violent offense under section 1192.7, subdivision (c) or section 667.5, subdivision (c)." (*Green, supra,* 36 Cal.App.4th at p. 283.) When section 667, subdivision (d)(1) is read as a whole, it is apparent the Legislature did not provide for prospective-only application.

The provision reads: "The determination of whether *a prior conviction* is a prior felony conviction for purposes of subdivisions (b) to (i), inclusive, shall be made upon the date of that prior conviction and is not affected by the sentence imposed unless the sentence automatically, upon the initial sentencing, converts the felony to a misdemeanor. . . ." (§ 667, subd. (d)(1), italics added.) The characterization of a *prior conviction* necessarily is retrospective, i.e., occurs during a later proceeding. The contemporaneous characterization of a *current* conviction (that Gonzales argues the statute requires) is manifestly not a "determination of whether a *prior* conviction is a prior felony conviction." The purportedly "plain language" concerning the *timing* of the determination conflicts with the equally "plain meaning" of the well-established phrase "prior conviction." This linguistic collision requires further examination.

When the remaining language of section 667, subdivision (d)(1), is examined, the intended meaning becomes apparent. The provision does not require a contemporaneous characterization of a conviction but ensures that post-conviction events will not transform the felony into a misdemeanor (with the sole exception expressed).

---

[4]Section 667, subdivision (d)(2) defines a qualifying foreign prior conviction as "A conviction in another jurisdiction for an offense that, if committed in California, is punishable by imprisonment in the state prison. A prior conviction of a particular felony shall include a conviction in another jurisdiction for an offense that includes all of the elements of the particular felony as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7."

The "pleading and proof" requirement of section 667, subdivision (c), applies to the current case, in which the Three Strikes sentencing scheme is invoked. Subdivision (d) explains what proof is required in that proceeding; it contemplates a determination *in that proceeding* of whether the prosecution has proved the alleged prior felony convictions.

Subdivision (b) expresses the legislative intent "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses." (§ 667, subd. (b).) A similar statement justified adopting the Three Strikes law as an urgency measure. (Stats. 1994, ch. 12, § 2, p. 59.[5]) The Legislature wanted the new sentencing scheme to become available immediately.

Recidivism laws are familiar in California. Such laws have routinely applied to persons with specified prior offenses predating the law's effective date, who commit a new crime after the law takes effect. (*People* v. *Jackson* (1985) 37 Cal.3d 826, 833 [210 Cal.Rptr. 623, 694 P.2d 736] [§ 667 serious felony enhancement enacted pursuant to Prop. 8]; *People* v. *Williams* (1983) 140 Cal.App.3d 445, 448-449 [189 Cal.Rptr. 497] [§ 667.5 prior prison term enhancements enacted as part of determinate sentencing law].)

Moreover, the constitutionality of "retroactive" application is well settled. "In the context of habitual criminal statutes, 'increased penalties for subsequent offenses are attributable to the defendant's status as a repeat offender and arise as an incident of the subsequent offense rather than constituting a penalty for the prior offense.' [Citation.]" (*People* v. *Jackson, supra,* 37 Cal.3d at p. 833; *Sipe, supra,* 36 Cal.App.4th at p. 479.)

In light of the retroactivity feature of past habitual criminal statutes, of which the Legislature is deemed to have been aware when it enacted the Three Strikes law, no plausible reason occurs to support a prospective approach here. Indeed, to delay the practical operation of the law unnecessarily would have defeated the purpose of the urgency clause and severely undercut the legislative intent. To adopt an urgency clause accelerating the effective date by less than 10 months while simultaneously deferring the practical effective date potentially by many years would have been an exercise in legislative schizophrenia this court should not presume.[6]

As noted, section 667, subdivision (d)(2), applies the Three Strikes law to foreign convictions equivalent to California's serious and violent felonies.

---

[5]The urgency clause of the statute states: "The facts constituting the necessity [for immediate effect] are: [¶] In order to ensure longer prison sentences and greater punishment for those who commit a felony and have been *previously* convicted of serious or violent felony offenses, and to protect the public from the *imminent threat* posed by those repeat felony offenders, it is *necessary* that this act *take effect immediately*." (Italics added.)

[6]The Three Strikes law contains various provisions intended to prevent its circumvention by prosecutors, courts, and even the Legislature. For example, it prohibits plea bargaining (§ 667, subd. (g)), prevents courts from striking a prior in the interests of justice (§ 667, subd.

This case does not raise the issue whether the determination clause applies to foreign convictions. But whether or not the clause applies to foreign convictions, accepting Gonzales's interpretation would yield bizarre consequences. If the "determination clause" does apply to foreign convictions (as *Anderson* assumes), as a practical matter a foreign conviction—whether it occurred before or after March 7, 1994—would never be available for Three Strikes purposes (under Gonzales's interpretation). It is highly unlikely a sister state or federal court would undertake a contemporaneous determination of whether the current conviction qualified for California Three Strikes treatment. (*Anderson, supra,* 35 Cal.App.4th at p. 601.)

Alternatively, if the "determination clause" does not apply to foreign convictions, an anomaly results. A defendant with foreign equivalent convictions predating March 7, 1994, would be subject to the law as soon as he committed a new California felony, while California serious or violent felonies of the same vintage would not be usable. That the Legislature intended to distinguish between recidivist felons based on the origin of their priors is highly unlikely; that it would have intended to benefit recidivists with *California* priors is inconceivable.

Gonzales argues retroactive application of Three Strikes would nullify section 667, subdivision (a)'s serious felony enhancement. Under his argument, prospective application would accomplish the same result, only more slowly. Moreover, the argument appears to assume, without reasoned discussion, a court may not impose a serious felony enhancement and invoke the Three Strikes sentencing scheme in the same case. This court need not face the issue here, but other courts have rejected Gonzales's premise. (*Anderson, supra,* 35 Cal.App.4th at p. 6; *People v. Ramirez, supra,* 33 Cal.App.4th at p. 56.)

Gonzales also argues the "determination clause" is an analog to section 969f, which permits the prosecutor to charge and the court to find the current offense to be a section 667, subdivision (a) serious felony. This argument does not persuade us. It can as easily be argued that section 969f will help preserve a record on which a later "strike" finding can be based.

In sum, the admittedly awkward language of the "determination clause" does not require this court to accept Gonzales's interpretation of section 667, which depends on an irreconcilable reading of subdivision (d)(1), flies in the face of the clear legislative intent, and would produce absurd results.

■ Finally, Gonzales argues prior felony convictions as defined by section 667, subdivision (d), do not include convictions for offenses which

(f)(2)), and freezes the list of qualifying priors as of June 30, 1993 (§ 667, subd. (h)). That the Legislature would have gone to these lengths to prevent circumvention and then itself unnecessarily limited the law to prospective application is not reasonable.

were not section 1192.7, subdivision (c) (serious felony) or section 667.5, subdivision (c) (violent felony) offenses at the time of conviction.

The "determination clause" requires the ultimate sentencing court to determine whether, as of the date of a prior conviction, a prior conviction was a felony or misdemeanor. It does not require a contemporaneous determination, when the prior conviction occurred, that the conviction constituted a "strike" or a "serious felony" or "violent felony." This being the case, the Three Strikes law does apply to felony convictions predating March 7, 1994, which fit the definition of a "serious felony" or "violent felony" on the relevant date. The Three Strikes law also applies to felony convictions which were neither "serious" nor "violent" felonies at the time of conviction, but which again fit the definition of a "serious felony" or "violent felony" on the relevant date.[7] In this regard, as noted above, both the "serious felony" enhancement enacted as part of Proposition 8 and the "violent felony" prior prison term enhancement adopted as part of the determinate sentence law have been held to apply to convictions that predated their respective effective dates, where the defendant's current crime occurred after that date. Again, no plausible reason exists why the Legislature would have chosen to treat "serious" or "violent" felonies differently for purposes of the Three Strikes law than they were treated under their own enhancement statutes.[8]

### DISPOSITION

The petition for writ of mandate is denied, the order to show cause discharged, and the stay of trial vacated.

Dibiaso, J., and Harris, J., concurred.

A petition for a rehearing was denied September 22, 1995, and the opinion was modified to read as printed above.

---

[7]The Three Strikes law freezes the list of qualifying felonies as of June 30, 1993. (§ 667, subd. (h).)

[8]In his petition for rehearing, Gonzales argues the language quoted from *Anderson, supra,* and *Green, supra,* supports his argument the Three Strikes law only applies to convictions that, when suffered, qualified as "serious" or "violent" felonies. The *Anderson* language ("the qualifying status of a conviction would be fixed upon the date of the prior conviction"), to us, simply refers to whether the conviction was a felony or a misdemeanor. (*Anderson, supra,* 35 Cal.App.4th at p. 600.) It is completely consistent with our opinion. The *Green* language (requiring a court to look back to see "if, at the time of the conviction of the past offense, such past offense qualified as a serious or violent offense") arguably supports Gonzales's argument. (*Green, supra,* 36 Cal.App.4th at p. 283.) However, the language was dicta. Neither *Green* nor *Anderson* involved the issue whether the Three Strikes law can apply to convictions that were felonies, but predated the "serious felony" and "violent felony" enhancement laws. Opinions are not authority for matters not considered. (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].)